**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| AMY L. ISON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CASE NO. 2:20-cv-415 |
| | ) | |
| AMEDISYS HOLDING, LLC, | ) | |
| | ) | |
| Defendant | ) | |

***PLAINTIFF'S COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND
REQUEST FOR TRIAL BY JURY***

## *I. INTRODUCTION*

Plaintiff Amy L. Ison ("Ison") is pursuing claims under the Family and Medical Leave Act ("FMLA"), the Fair Labor Standards Act ("FLSA") and the Indiana Wage Claims Statute against her  former employer, Amedisys Holding, LLC ("Amedisys").

## *II. FACTUAL ALLEGATIONS*

1.      Ison is a resident of Farmersburg, Sullivan County, Indiana.  Ison worked for Amedisys as a home health care nurse from approximately September 11, 2018 until the date of her wrongful termination on April 17, 2020.  Ison worked for Amedisys from its Terre Haute, Indiana location.  Ison is a Licensed Practical Nurse ("LPN").

2.      Ison is pursuing claims against Amedisys for its violations of her rights under the FMLA, based upon her own serious health condition.  Ison's FMLA claims include claims against Amedisys for its violation of her substantive rights (e.g., interference with Ison's right to use FMLA leave) and for Amedisys's discrimination and retaliation against Ison for her use and requested use of her FMLA rights, which is legally protected activity.

1

3.      Ison is also pursuing wage and hour claims against Amedisys for its violations of her rights under the FLSA and the Indiana Wage Claims Statute, I.C. 22-2-9.

4.      Ison did good work and met all of Amedisys's reasonable expectations.

5.      As described in more detail below, on April 1, 2020, Ison first developed a dry cough.  Consistent with Amedisys's policy on COVID-19 (coronavirus), Ison contacted her Amedisys office that morning (at approximately 8:00 a.m.) before her work was scheduled to begin and reported to her immediate supervisor, Teri Schauwecker, the fact that she had a dry cough.  Ison had to travel to the home of her first patient for an appointment scheduled for 9:00 a.m.  Ms. Schauwecker promised to call Ison back and did so at approximately 8:20 a.m.  Ms. Schauwecker told Ison she did not have to call in for her normal 8:30 a.m. Zoom morning meeting and that Ison should travel to her first appointment.  She told Ison to wear a safety mask, which Ison did.  Ison visited and treated each of her patients that entire work day.

6.      On April 2, 2020, Ms. Ison participated in her 8:30 a.m. Zoom morning meeting and reported that she had developed no new symptoms of COVID-19.  Ison visited her patients and finished work around noon.  At that time, Ison checked her own temperature and she registered a fever at 101°.  Ison immediately called her Amedisys office and reported to her immediate supervisor, Ms. Schauwecker, that she had a fever now in addition to her dry cough. Ms. Schauwecker instructed Ison to call her health care provider immediately, which Ison did. Ison called her Nurse Practitioner Kathy Pirtle and Ms. Pirtle instructed Ison to drive to a mobile COVID-19 testing center set up at the Sullivan Community Hospital.  Ison was given a strep test and a respiratory panel at that site.

7.      Ms. Schauwecker reported Ison's COVID-19 symptoms to Susan Turner-Cooper,

the Amedisys Director of Operations for Terre Haute.  Ms. Schauwecker instructed Ison to call Ms. Cooper with results of her strep and respiratory tests, which Ison did that same night.  The first two tests were negative.  Ison was scheduled for her first COVID-19 test the next day, April 3, 2020.

8.      Ms. Cooper placed Ison on quarantine for COVID-19.  Quarantine was to last from April 2, 2020 through April 16, 2020.  During Ison's quarantine, Ms. Cooper called, texted and emailed Ison.  Ms. Schauwecker also had some communication with Ison during the quarantine.  During the first days of quarantine for COVID-19 symptoms, Ison was sick with a fever and a cough.  Her fever left her that first weekend.  Ison was tested two times for actual COVID-19 while on quarantine, and both times, fortunately, Ison tested negative.  Ison was then cleared to return to work on April 17, 2020.  Ison's Nurse Practitioner, Ms. Pirtle, faxed a return to work form to Ms. Cooper stating Ison's ability to return to work starting April 17, 2020.  Ison was scheduled to visit patients on Saturday, April 18, 2020.

9.      Ms. Cooper sent a text to Ison instructing her to come to the Amedisys office on Friday April 17, 2020 to sign some type of return to work attestation.  Ison complied.  At approximately 9:00 a.m. on April 17, 2020, Ison traveled to the Terre Haute office.  She met with Ms. Cooper and Ms. Schauwecker.  At this point, Ms. Cooper told Ison she was firing her. Cooper claimed to Ison "you didn't follow protocol" (for reporting COVID-19 symptoms to her employer) and accused Ison of not telling anyone at Amedisys that she had COVID-19 symptoms.  Both of these accusations were lies.  Ison told her supervisor, Ms. Schauwecker, immediately when she first had a cough and the next day when she registered a fever.  Ison also spoke with Ms. Cooper and was quarantined.  She kept nothing about her health from anyone.

3

Ms. Cooper told Ison to turn in her tablet and handed some paperwork to Ison.  Cooper finished by telling Ison that she would also not receive paid leave, because "you (Ison) did not have COVID-19."

10.     From her comments and behavior, it appears Ms. Cooper was angry that Ison did not actually test positive for COVID-19 and fired Ison for her two week medical leave (quarantine) with COVID-19 symptoms, which Cooper herself had ordered.

11.     It is obvious from the timing of Ison's termination and the comments made to her that Ison's employer fired her rather than let her return to work after recovering from COVID-19 symptoms, properly quarantining to protect others, and gaining medical clearance to return to work.

12.     Ison's employment was not in jeopardy prior to Ison's illness and subsequent COVID-19 quarantine, which was medical leave for her own serious health condition.

13.     Ison is expressly asserting that Amedisys, acting by and through Ms. Cooper, terminated Ison to interfere with Ison's use of FMLA-protected medical leave, and to discriminate and retaliate against Ison for having taken two consecutive weeks of medical leave to recover from her illness and to quarantine in the event her illness had been COVID-19 (which would be protected by the FMLA).

14.     As described above, Ison placed her employer on notice that she needed medical leave to undergo testing for COVID-19 and to quarantine in order to protect patients, coworkers and others from her in the event she had contracted COVID-19.  Indeed, Ison was instructed to take two weeks medical leave by Ms. Cooper.  Ison was eligible for FMLA protections based upon her length of service, hours of work in the preceding twelve months, and based upon

Amedisys's number of employees (50 or more) working for it from the Terre Haute location and within seventy-five miles of the Terre Haute location.

15.     All of Amedisys's reasons for terminating Ison's employment are illegal and violate the FMLA.  Ison has been significantly harmed by Amedisys's discriminatory and retaliatory termination of her employment.  Moreover, Amedisys took this action and terminated Ison in order to interfere with her use of FMLA leave to protect her employment while quarantining and caring for her own serious health condition and attending medical appointments and receiving medical testing.  Ison is seeking all lost wages and benefits, all liquidated damages, reinstatement or front pay and benefits, payment of all of her reasonable attorney's fees, costs and expenses, plus any equitable relief which would make her whole.

16.     As described above, Ison worked for Amedisys as an LPN serving home health care patients.  She worked for Amedisys in this capacity from September 11, 2018 until April 17, 2020.  This job required Ison to provide patient care to Amedisys patients in their own homes, travel in her personal vehicle from patient home to patient home over the course of her work day, complete documentation about her patients and patient visits, and participate in various meetings and trainings required by Amedisys.

17.     Ison was a non-exempt LPN for purposes of the Fair Labor Standards Act.  It is not clear whether or not Amedisys actually misclassified Ison as exempt in her employment, but Ison's pay stubs make it very clear that Amedisys's strange compensation system failed to pay Ison at FLSA overtime rates for the many overtime hours she worked week after week and Amedisys did not pay Ison at all for many of the hours she worked each week.   From her pay stubs, Ison had a primary regular rate of hourly pay assigned to her work.  In Ison's case, at least

in her last six months of work, Ison's primary regular rate of pay was $33.76 per hour.

Amedisys did not pay Ison $33.76 per hour for every hour she worked each day.  For example,

Amedisys was not tracking Ison's hours of work using a continuous workday method - from

Ison's first principal work activity each day through her final principal work activity.  To

provide specific examples of Amedisys' failure to pay Ison at her full rate of $33.76 per hour,

Ison provides the following:

    a.    Amedisys did not pay Ison her full hourly rate of $33.76 for time in patient care. Instead, Amedisys paid on a "per visit" system using "points."  For almost every patient visit, Amedisys would pay Ison at her $33.76/hour rate for 0.90 hours. This was true regardless of how long (how many hours) Ison would spend with her patient.

    b.    Amedisys paid Ison nothing at all for her time spent traveling from one patient's home to the next patient's home during the course of Ison's continuous work day. Instead, Amedisys paid Ison only a small amount of mileage reimbursement - believed to be $0.45 per mile - for use of her personal vehicle driving for work. This mileage reimbursement rate was insufficient, as it was far below the IRS reimbursement rate of $0.585 in place at the time.  This sub-standard mileage reimbursement and requirement that Ison use her own vehicle, gas, oil and provide insurance, resulted in unlawful "kickbacks" which further violate the FLSA.

    c.    Amedisys paid Ison at a rate far below her $33.76/hour rate for "Paid Time Off" and her "Holiday" wages.

    d.    Amedisys paid Ison at a rate far below her $33.76/hour rate for work it called "Administrative Time."

    e.    Amedisys paid Ison at a rate below her $33.76/hour rate for work it called "Mandated Compliance Activity."

    f.    Throughout Ison's employment, Amedisys required Ison and other of her coworkers to telephone in (or communicate through Zoom) to work meetings with a supervisor and coworkers every day, Monday through Friday, at both 8:30 a.m. and 4:15 p.m.  Amedisys did not pay Ison for these twice per day work meetings. The morning meetings (8:30 a.m.) lasted 15 minutes per day on average and the afternoon (4:15 p.m.) meetings lasted 30 minutes per day on average.

18.    Throughout Ison's entire period of employment with Amedisys, Amedisys failed and refused to pay Ison for all of her hours worked and, in so doing, also failed to fully compensate Ison for all overtime work performed.  Amedisys' wage violations committed against Ison include, but are not limited to, the following:

    a.    Amedisys did not accurately record all of Ison's hours worked and Amedisys did not fully compensate Ison for all of her hours worked;

    b.    Amedisys did not pay Ison for all of her hours worked based upon a continuous work day method, meaning, Amedisys did not measure Ison's hours of work from a first principal activity each day and pay to a last principal activity, nor did Amedisys pay Ison for all of her hours of work from a first principal activity each day and pay to a last principal activity.  Typically, Ison's first principal activity each day entailed either a required morning meeting with other Amedisys

coworkers and supervisors or her first travel to a patient's home and her last

principal activity would be return travel from the home of the last patient treated

that day or a 4:15 meeting with supervisor and coworkers;

c.     As described above, Amedisys did not pay Ison for all work-required travel time

that occurred during Ison's continuous workday, meaning, Amedisys did not pay

Ison for all travel time occurring after Ison's first principal activity each day and

all travel time occurring prior to Ison's last principal activity of each day; and

d.     Amedisys did not pay Ison for her overtime hours of work at an overtime rate of

pay - one and one-half times her full regular rate of pay.

19.     Throughout her employment, Ison routinely performed work for Amedisys that

far exceeded forty (40) hours during each calendar week, however, for the reasons described

above, Amedisys failed to fully compensate Ison for all hours worked and, in so doing, failed

also to compensate Ison at an overtime rate of pay for her hours worked in excess of forty (40) in

each of those calendar week.  Ison estimates that she worked at least 45 to 55 hours each full

work week she was employed by Amedisys.

20.     Because it was compensating Ison on an unexplained system of what Amedisys

called "hours," "units" and "points," Amedisys failed to pay Ison for a very substantial number

of work hours in each work week, including all hours traveling during her work day, some hours

in visits with patients, time spent in meetings and training, time spent completing records and

patient documentation, and in other tasks and errands she was required to perform by Amedisys

as a condition of her job.

21.     By way of this Complaint, Ison seeks all wages owed to her, including all earned

wages, all unpaid wages, all overtime compensation, all liquidated damages, plus all statutory penalties for late payment of wages.  Additionally, Ison seeks payment of all of her reasonable attorney's fees, costs and expenses.  With respect to Ison's uncompensated wages and overtime, Amedisys' violations of Ison's rights under the FLSA and the Indiana Wage Claims Statute, I.C. 22-2-9, were willful, in bad faith (and certainly not in good faith), warranting the application of the FLSA's three year statute of limitations and liquidated damages under the Indiana Wage Claims Statute.

## II.  JURISDICTION AND VENUE

22.     Ison's Complaint raises federal questions of law and this Court has jurisdiction over the subject matter of this complaint pursuant to 28 USC § 1331 and under 29 USC § 2601 et seq. and 29 USC § 201 et seq.  This Court has supplemental jurisdiction over Ison's Indiana statutory wage claims, which are based upon a common set of facts with her Federal claims.

23.     This Court is the appropriate venue for this cause of action as Ison worked for Amedisys in and around Vigo County, Indiana.  28 USC § 1391.

## III.  PARTIES

24.     Ison is a resident of Farmersburg, Sullivan County, Indiana.

25.     Amedisys employed Ison to work for it from its office in Terre Haute, Indiana and serving clients at their homes in and around Vigo County, Indiana and surrounding counties.

## IV.  ADMINISTRATIVE PROCEDURES

26.     Because she was terminated, Ison has reported Amedisys' failure to pay her all of her wages to the Indiana Department of Labor, Wage and Hour Division.  Ison has obtained permission to pursue this matter privately, with her attorney serving as the Indiana Attorney

General's "designee."  That permission was issued by the Office of the Indiana Attorney General

by letter dated July 24, 2020 and received by her attorney on August 5, 2020.  This permission

allows Ison to pursue her wage claim under I.C. 22-2-9-2 and I.C. 22-2-9-4, utilizing the

remedial provisions of I.C. 22-2-5-2.

### V.  STATEMENT OF CLAIMS

### A.  FAMILY AND MEDICAL LEAVE ACT CLAIMS

27.     Ison incorporates herein by reference paragraphs 1 through 26 above.

28.     By way of this Complaint, Ison asserts that she is a covered and eligible employee

under the Family and Medical Leave Act (hereinafter "FMLA"), who worked at least one

thousand two hundred and fifty (1,250) hours in the twelve (12) months preceding her notice to

Amedisys that she would need to take medical leave covered by the FMLA (when she was

quarantined for two weeks after reporting a fever and COVID-19 symptoms).  Moreover, Ison

had worked well over one year for Amedisys prior to the time she told her supervisors that she

had COVID-19 symptoms and, therefore had need for medical leave that would be covered by

the FMLA.

29.     Ison's eligibility for leave under the FMLA stems from her employment at

Amedisys.  Amedisys has and had far more than fifty (50) employees working for it within a

seventy-five (75) mile radius of the Terre Haute, Indiana location from which Ison worked at all

times relevant (meaning, calendar years 2020, 2019 and 2018).  Amedisys was and is an

employer under the definition of the FMLA and Ison was an eligible employee with Amedisys.

30.     Ison's own serious health condition - presenting with COVID-19 symptoms

(including a fever and persistent dry cough) necessitated her need for continuing medical

treatment, testing and medical leave in the form of quarantine.  In fact, Ison's supervisors placed her on two weeks' quarantine and medical leave.  Ison certainly properly notified her supervisors that she had COVID-19 symptoms and needed this medical leave to care for her own serious health condition.

31.     Amedisys wrongfully and illegally violated Ison's substantive FMLA rights and interfered with Ison's right to use her FMLA leave to protect and preserve her employment, particularly as Amedisys refused to preserve Ison's employment and refused to permit Ison to return to employment when her period of quarantine ended and Ison was cleared by her health care provider to return to work.

32.     Amedisys wrongfully discriminated against and retaliated against Ison for using the FMLA to care for herself while trying to protect and preserve her own employment.

33.     As a direct and proximate result of Amedisys' conduct, Ison has sustained substantial economic losses, including, but not limited to, career damage and past and future loss of wages and other economic benefits.  By way of this Complaint, for Amedisys' violations of the FMLA, Ison is seeking all available damages, including, but not limited to, liquidated damages, back pay and benefits, reinstatement or front pay and benefits, all of her attorney's fees, costs and expenses, and any other damages necessary to remedy Amedisys' violations of Ison's rights under the FMLA.

34.     Ison was wrongfully terminated from her employment with Amedisys while (and for) attempting to exercise her right to use FMLA leave.  Ison's exercise of her FMLA rights was the primary factor which improperly motivated Amedisys to terminate her employment.  Said wrongful termination of Ison's employment is prohibited by 29 U.S.C. § 2615.

### B.  CLAIM UNDER THE FAIR LABOR STANDARDS ACT

35.     Ison incorporates herein by reference paragraphs 1 - 34 above.

36.     Amedisys is a covered employer subject to the provisions of the Fair Labor Standards Act, as it is an "enterprise" with gross operating revenues in excess of $500,000 per year in 2019 and 2020.  Further, Amedisys is an "employer" as that term is defined under the FLSA at 29 USC § 203(d).

37.     By not paying Ison at all for some of her periods of time worked and by not paying Ison for her overtime hours worked at an overtime rate of pay, Amedisys has violated Ison's rights to be paid overtime under the Fair Labor Standards Act.  Ison was a non-exempt employee who worked for Amedisys as a LPN.

38.     Amedisys' failure to comply with the Fair Labor Standards Act's provisions regarding overtime compensation is willful and without justification.

39.     Ison seeks all available damages, including her unpaid wages, unpaid overtime compensation itself, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which she may be entitled for Amedisys' violations of the Fair Labor Standards Act.

### C.  CLAIM UNDER THE INDIANA WAGE CLAIMS STATUTE

40.     Ison incorporates herein by reference paragraphs 1 - 39 above.

41.     By way of this Complaint, Ison is seeking all available damages, including unpaid wages, damages for late payment of wages, and all available liquidated and/or treble damages, plus any and all attorney's fees, costs, and expenses, and any other damage to which she may be entitled pursuant to Indiana Law.  This includes payment for all hours of work that were unpaid

(e.g., travel time, etc...) and all hours of work that were paid at a lower rate of pay than Ison's promised $33.76 per hour.  Pursuant to the Indiana Wage Claims Statute, which incorporates I.C. 22-2-5-2, Ison is seeking payment of unpaid wages and all available damages, including, but not limited to, double the amount of wages due as an additional monetary damage, plus all of her attorney's fees, costs and expenses.

42.     Amedisys' failure to pay Ison her wages 1) on time and 2) in full were acts of bad faith.  Ison is certainly entitled to payment of all of her earned wages, liquidated damages for the late paid wages, and liquidated damages for the unpaid wages.  Because she was involuntarily terminated from employment, Ison's right to damages arises under I.C. 22-2-9-4(b), which incorporates the damages provisions of I.C. 22-2-5-2.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Amy L. Ison respectfully requests that the Court enter judgment against Defendant Amedisys Holding, LLC and issue all available relief to her, including, but not limited to, the following:

1.     All damages available under the FMLA,  including all back pay and benefits, all available liquidated damages, reinstatement and/or front pay and benefits, and payment of all reasonable attorney's fees, costs and expenses;

2.     All damages available under the FLSA, including all unpaid wages, unpaid overtime, liquidated damages and payment of all reasonable attorney's fees, costs and expenses;

3.     All damages available under the Indiana Wage Claims Statute, including all unpaid and underpaid wages, all liquidated damages, and payment of all

13

reasonable attorney's fees, costs and expenses;

4.      Costs;

5.      Pre-judgment interest, if available; and

6.      Any and all other relief just and proper in the premises.

Respectfully submitted,

HASSLER KONDRAS MILLER LLP

By /s/Robert P. Kondras, Jr.
    Robert P. Kondras, Jr.
    Attorney No. 18038-84
    100 Cherry Street
    Terre Haute, IN 47807
    (812) 232-9691
    (812) 234-2881 Facsimile
    kondras@hkmlawfirm.com

### *REQUEST FOR TRIAL BY JURY*

Comes now Plaintiff Amy L. Ison, by counsel, and requests a trial by jury on all issues which may be tried to a jury.

Respectfully submitted,

HASSLER KONDRAS MILLER LLP

By /s/Robert P. Kondras, Jr.
    Robert P. Kondras, Jr.
    Attorney No. 18038-84
    100 Cherry Street
    Terre Haute, IN 47807
    (812) 232-9691
    (812) 234-2881 Facsimile
    kondras@hkmlawfirm.com

14